## SPRINGFIELD IRON CO. *v.* KELLEY et al.

(*Supreme Court, General Term, First Department.* May 18, 1888.)

1. SALE—REFUSAL TO ACCEPT GOODS—MEASURE OF DAMAGES.
    In an action by the seller against the purchaser for refusal to accept railroad iron purchased under a written contract, the measure of damages is the difference between the contract price and the market price at the time of commencing the suit.

2. SAME—REFUSAL TO ACCEPT GOODS—COUNTER-CLAIM.
    In an action by the seller against the purchaser for refusal to accept railroad iron purchased under a written contract, defendant cannot set up, as a counter-claim, damages caused by a failure of plaintiff to deliver iron on a contract with a company of which defendant is a stockholder.

3. SAME—AGREEMENT TO EXTEND TIME FOR DELIVERY—FINDINGS OF REFEREE.
    In an action for refusal to accept iron under a written contract of sale, wherein it was stipulated that the iron should be delivered on certain dates, it appeared that subsequent to its execution negotiations were entered into between the parties to extend the time of delivery. There was evidence to show, and the referee found, that the negotiations were never consummated. *Held*, that the finding of the referee was conclusive.

Appeal from judgment on report of referee.

Action by the Springfield Iron Company against David M. Kelley and another for a breach of contract. The case was tried before a referee, who

found for plaintiff, and from the judgment entered thereon defendant appealed.

Argued before VAN BRUNT, P. J., and BARTLETT and MACOMBER, JJ.

*Daniel Seymour,* for appellant. *Rush Taggart* and *Dillon & Swayne,* for respondent.

MACOMBER, J. It appears from the evidence that on the 15th of January, 1880, the plaintiff and defendants entered into a written contract by which the former was to furnish and the latter to pay for 2,000 tons of iron rails, to be delivered, during the months of May and June of that year, on board cars, at the works of the plaintiff, at Springfield, in the state of Illinois, in equal quantities in each month, together with certain fish-plates or splice-bars for the iron rails. By a subsequent agreement between the parties, the time for the delivery of the iron rails and of the fish-plates was extended from May and June, 1880, to June and July of that year, but there was no other modification of the original agreement made by the parties. Subsequently to this time, certain negotiations were entered into between the parties, with a view, on the part of the defendants, of an extension, for a considerable time, of the period in which the iron should be delivered. The main contention on the part of the learned counsel for the defendant is that these negotiations resulted substantially in an agreement by which the delivery should be had in equal parts on the 15th day of October, and the 15th day of November, 1880. If this contention were true as matter of fact, it would follow that this action could not be maintained, because it was begun before the 15th day of October, 1880, and consequently before the time in which the defendant was required, by virtue of the subsequent agreement, to receive and pay for the property. Upon an examination of the evidence, however, it is ascertained that the preponderance thereof is in favor of the conclusion reached by the referee, namely, that such negotiations for a postponement of the time of delivery until October and November did not culminate in any agreement between the parties, but rested only in negotiations, and that at last the plaintiff made a final demand that the defendant should receive the property within a reasonable time after about the 12th day of August of that year. At the utmost, it may be said that the plaintiff considered the proposition of the defendants for a delivery, at those times, only upon the assumption that security other than was required by the original agreement should be furnished by the defendants for the faithful performance of the contract of payment on their part. This was never done. Hence it is that the plaintiff had clearly the right, the subsequent negotiations failing, to demand that the defendants fulfill their part of the agreement by receiving the iron, and paying therefor within a reasonable time. The evidence shows the fact to be that the defendants, in violation of their agreement, failed to permit the iron to be delivered to them, and failed to make any payment therefor, either within the time limited by the original agreement, or within the period by which the time of the fulfillment of the original agreement was extended by consent, or within a reasonable time after being notified so to do. They also failed to comply with the plaintiffs' peremptory demand of performance, made early in October following.

Such being the fact, as found by the referee, and as conclusively established by the evidence, the only other question was the amount of damages to which the plaintiff was entitled. The testimony upon this subject, which is given by numerous witnesses, is quite uniform, and we think the learned referee was justified in his conclusion as to the amount of damages which should be awarded to the plaintiff, based upon the proper measure adopted by him, which was the difference between the contract price and the actual value of the property at the time of the beginning of this action, which was the 12th day of October, 1880. We are unable to see that the defendants

have any right to counter-claim, against the plaintiff, damages by reason of the alleged failure of the plaintiff to deliver 390 tons of iron named in another contract. That contract was not with the defendants, although, possibly, they may have had some interest as stockholders in the railway construction company, so called, with which the contract was made. No privity is shown between the defendants and the plaintiff, in regard to that contract, which would enable the former to claim damages against the latter by reason of any failure on its part to deliver that amount of iron.

We have examined the several exceptions to the reception and rejection of evidence, as well as the exceptions to the requests and refusals to find in accordance with the defendants' views of the case, and find in them no error which would warrant us in reversing the judgment. The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and BARTLETT, J., concurred.